IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No. RDB-23-0421 |
| | * | |
| JOHN DOE a/k/a Douglas Anthony Chukwuka Eze | * | |
| a/k/a Antony Chux Ezehez | | |
| a/k/a S.D.C, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM ORDER**

Defendant John Doe, also known as Douglas Anthony Chukwuka Eze ("Defendant" or "Eze"), is charged in a nine-count Superseding Indictment with various instances of identity theft and immigration fraud between 2017 and 2023.  (ECF No. 48).  Specifically, the operative Superseding Indictment charges one count of false statement in application of passport, in violation of 18 U.S.C. § 1542 (Count One); two counts of false swearing in immigration matter, in violation of 18 U.S.C. § 1546 (Counts Two, Three); four counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A (Counts Four, Five, Eight, Nine); and two counts of use of passport secured by false statement, in violation of 18 U.S.C. § 1542 (Counts Six, Seven). Among the motions presently pending before this Court is Defendant's Motion to Dismiss the Indictment ("Defendant's Motion") (ECF No. 43).[1]   The parties' submissions have been

---

[1]  As noted below, Defendant filed his Motion to Dismiss the Indictment (ECF No. 43) ("Defendant's Motion to Dismiss") as to the original Indictment on September 30, 2024.  Several months later, on January 15, 2025, the Government filed the operative Superseding Indictment (ECF No. 48).  On the record at the Motions Hearing held on Tuesday, February 4, 2025, Defendant renewed his Motion to Dismiss as to the Operative Superseding Indictment such that he need not refile his original Motion to Dismiss (ECF No. 43), and the Court construes his Motion to Dismiss to address the operative Superseding Indictment.

reviewed, and, on February 4, 2025, the Court heard oral arguments regarding Defendant's Motion. For the reasons set forth on the record at the hearing and explained further below, Defendant's Motion (ECF No. 43) is DENIED.

## BACKGROUND

This case arises from allegations that Defendant used another's identifying information to secure entry, immigration documentation, travel documents, and citizenship status in the United States. According to the Government, Defendant's true identity remains unknown. (ECF No. 45 at 2.)

On June 9, 1991, Eze used a Malawian passport in the name Anthony Chux Ezehez ("Ezehez") to gain admission to Canada as a visitor until September 9, 1991. (ECF No. 48 ¶ 2.) Using the name Ezehez, Eze made a refugee claim alleging that he feared return to Malawi. (*Id.* ¶ 3.) On March 30, 1993, Canada denied Eze's claim after discovering that he was not from Malawi and his Malawian passport had been forged. (*Id.*) On December 14, 1994, Eze was convicted in Alberta, Canada, of a property crime related to a birth certificate and check. (*Id.* ¶ 4.) As a result of the conviction, Canadian officials took Eze's fingerprints under the name Ezehez on January 6, 1995. (ECF No. 45 at 2.) On March 27, 1995, Canada issued a deportation order in the name of Ezehez, but Eze failed to report for deportation. (ECF No. 48 ¶ 5.) Canadian Border Services then issued a warrant for his removal. (*Id.* ¶ 6.)

---

Also pending before this Court is Defendant's Motion to Suppress (ECF No. 44) evidence obtained during his immigration interview at a United States Citizenship and Immigration Services ("USCIS") building in Baltimore on December 14, 2023. The Court heard oral argument and testimony as to Defendant's Motion to Suppress at the February 4, 2025, Motions Hearing. As explained on the record at the Motions Hearing, the Court has taken this Motion to Suppress (ECF No. 44) under advisement and will address it in a forthcoming Memorandum Opinion.

### A.  Entry, Naturalization, and Name Change in the United States

On or about May 10, 1997, Eze entered the United States without inspection, and, using the name "S.D.C."[2] married a United States citizen on July 11, 1997.  (*Id.* ¶¶ 6–7.)  On September 29, 1997, using the identity of S.D.C., Eze applied for lawful permanent residence in the United States based on his marriage.  (*Id.* ¶ 8.)  Eze submitted a birth certificate in the name of S.D.C. and claimed his parents were John and Andrea "C." of Canada.  (*Id.*)  As S.D.C., Eze obtained conditional lawful permanent residency on September 15, 1998, and filed a Form N-400 Application for Naturalization on April 18, 2002.  (*Id.* ¶¶ 9–10.)  During this application process, Eze's fingerprints were taken and logged in his immigration file under the name S.D.C.  (ECF No. 45 at 3.)  Eze was interviewed by United States Citizenship and Immigration Services ("USCIS") about the contents of his Form N-400 on February 4, 2003, and was naturalized in Baltimore on March 14, 2003.  (ECF No. 48 ¶ 11.)  On June 3, 2003, Eze legally changed his name from S.D.C. to Douglas Anthony Chukwuka Eze.  (*Id.* ¶ 12.)

### B.  U.S. Passports, Alien Relative Petitions, & Book Publication

On June 27, 2003, Eze obtained United States passport #016581030 ("2003 Passport") under the name Eze.  (*Id.* ¶ 13.)  In his Form DS-11 passport application, Eze listed his birthplace as Alberta, Canada; his parents as Godwin and Cordelia Eze; and his birthdate as February 22, 1970.  (*Id.*)  On July 29, 2008, Eze was issued United States passport #445155668 ("2008 Passport").  (*Id.* ¶ 14.)  In his DS-11 passport application for the 2008 Passport, Eze

---

[2] S.D.C. is the name of the victim whose identity Eze allegedly stole.  Therefore, the Superseding Indictment and the parties' filings refer to him as S.D.C. and, when relevant, to his parents by their last initial, "C."

listed his place of birth as Alberta, Canada, but listed his parents' names as James John C. and Andrea Robertson.  (*Id.*)  He also stated that his 2003 Passport had been lost or stolen.  (*Id.*)

In 2013, Eze wrote a book titled *Creating Generational Wealth*.  (ECF No. 45 at 4.)  In the dedication, he thanked his father "Chief Godwin Eze" and his mother "Cordelia Eze" and discussed growing up in Nigeria.  (*Id.* at 5.)  On September 16, 2016, Eze obtained a final judgment of adoption of his two purported minor nieces, A.C.E. and I.S.E.  (*Id.* ¶ 15.)

On September 24, 2017, Eze signed a Form DS-82 Passport Renewal Application in which he listed his prior name as S.D.C.; his most recent passport as his 2008 Passport; his birthplace as Alberta, Canada; and his birthdate as February 22, 1970.  (ECF No. 48 ¶ 16.) Eze was issued U.S. passport #445155668 ("2017 Passport") and a U.S. passport card #C15539931 ("2017 Passport Card") on September 27, 2017.  (*Id.*)  On March 15, 2021, Eze used his 2017 Passport Card to renew his driver's license in Annapolis, Maryland.  (*Id.* ¶ 18.) On October 23, 2023,  Eze presented his 2017 Passport in an interview to renew his participation in the Global Entry Trusted Traveler Network.  (*Id.* ¶ 19.)  During that interview, Eze stated that his birth name was S.D.C., and he was born to Cordelia and Godwin Eze on February 22, 1970, in Alberta, Canada.  (*Id.*)  His fingerprints were taken under the name Eze. (ECF No. 45 at 7.)

On May 13, 2019, Eze filed two United States Citizenship an Immigration Services ("USCIS") Forms I-130 Petitions for Alien Relative seeking citizenship on behalf of his adopted daughters, A.C.E. and I.S.E.  (*Id.* ¶ 17.)  Eze reported that he had previously used the name S.D.C. and that he was born on February 22, 1970, in Alberta, Canada.  (*Id.*)  He also submitted a Certificate of Naturalization in the name of S.D.C.  (*Id.*)

### C. Arrest and Indictment

The Government alleges that between September 2003 and January 2022, Defendant—using the name Eze—made approximately 34 border crossings.  (ECF No. 45 at 6.)  On February 23, 2022, Homeland Security Investigation forensic laboratory officials determined that the fingerprints taken in 1995 from "Ezehez" and in 1998 from "S.D.C." belonged to the same person.  (*Id.*)  On March 21, 2023, law enforcement interviewed the real S.D.C., a white male born on February 22, 1970.  (*Id.*)  S.D.C. provided identifying information, including his parents' names, and identified a photograph of Eze as a man named "Tony" who dated one of his roommates while S.D.C. was living in Vancouver in the late 1990s.  (*Id.*)  S.D.C. told law enforcement that he discovered his passport was missing some time in 2002.  (*Id.* at 7.)  On November 20, 2023, law enforcement determined that Eze's fingerprints taken in 2023 matched the fingerprints of "Ezehez" taken in 1995.  (*Id.*)  On November 21, 2023, a federal grand jury in Baltimore returned a sealed nine-count Indictment against Eze.  (ECF No. 1.)

On December 14, 2023, Eze, his immigration attorney, and his two daughters attended an interview at a USCIS building in Baltimore regarding the pending alien relative petitions he had filed for his daughters in 2019.  (ECF No. 45 at 7.)  The interview was recorded and, at its conclusion, Eze was arrested.  (*Id.*)  After being read his *Miranda* rights, Eze, through his immigration attorney, declined to speak with law enforcement.  (*Id.*)  On September 30, 2024, Eze filed the instant Motion to Suppress (ECF No. 43).  The Government responded in Opposition (ECF No. 45), and Defendant has replied (ECF No. 46).  As noted above, the Government filed a Superseding Indictment (ECF No. 48) on January 15, 2025.  On the record at the Motions Hearing on February 4, 2025, Eze renewed his Motion to Dismiss the

Indictment (ECF No. 43) as to the Superseding Indictment. This matter is now ripe for review.

## STANDARD OF REVIEW

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. CONST. amend. V. Under Federal Rule of Criminal Procedure 7(c)(1), an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged…" In *United States v. Mills*, 995 F.2d 480 (4th Cir. 1993), the United States Court of Appeals for the Fourth Circuit explained that "[t]he longstanding rule of law that courts may not 'look behind' grand jury indictments if 'returned by a legally constituted and unbiased grand jury' is the touchstone for any inquiry into the legality of indictments." *Id.* at 487 (quoting *Costello v. United States*, 350 U.S. 359, 363 (1956)) (cleaned up).

In *Costello v. United States*, 350 U.S. 359 (1956), the Supreme Court determined that "an indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charges on the merits." *Id.* at 363. As Judge Hollander of this Court has explained, "[a]n indictment implicates a defendant's constitutional due process right to reasonable notice of the charges." *United States v. Pratt*, ELH-12-401, 2014 WL 310565, at *4 (D. Md. Jan. 24, 2013). Therefore, a valid indictment "alleges an offense in the words of the statute" and "fully, directly, and expressly, without any uncertainty or ambiguity, sets forth all the elements necessary to constitute the offense." *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002). That is, "[t]o pass constitutional muster, an indictment must (1) indicate the elements of the offense and fairly inform the defendant of the exact charges and (2) enable

the defendant to plead double jeopardy in subsequent prosecutions for the same offense." *United States v. Williams*, 152 F.3d 294, 299 (4th Cir. 1998); *see also Hamling v. United States*, 418 U.S. 87, 117 (1974).

## ANALYSIS

Through his Motion (ECF No. 43), Eze seeks to dismiss the Superseding Indictment on three theories.[3]  First, Eze argues that Count One, false statement in application of passport in violation of 18 U.S.C. § 1542, must be dismissed with prejudice because § 1542 applies only to initial passport applications, and the conduct charged in Count One relates to Eze's renewal in 2017 of the passport he obtained in 2008.  (ECF No. 43 at 4.)  Next, Eze argues that Counts One, Two, Three, Six, and Seven, are each premised on activity that occurred sometime between the 1990s and 2008 such that they are barred by the ten-year statute of limitations imposed in 18 U.S.C. § 3291.  (*Id.*)  Eze asserts that because he was indicted on November 21, 2023, any charges related to events before November 21, 2013, are time-barred.  (*Id.*)  Finally, Eze argues that Counts Four, Five, Eight, and Nine must be dismissed because he did

---

[3]  As noted above, Eze initially moved to dismiss the original Indictment (ECF No. 1), and the Government filed the operative Superseding Indictment (ECF No. 48) several months later.  In its Superseding Indictment (ECF No. 48), the Government addressed typographical errors regarding the statutes under which certain Counts and predicate offenses were charged.  (*Id.*)  These alterations in the Superseding Indictment addressed one of Eze's four original theories of dismissal.  Specifically, these alterations addressed Eze's argument that Counts Four, Five, Eight, and Nine of the Original Indictment (ECF No. 1) had to be dismissed based on lack of predicate offenses because it was unclear on the face of the Indictment the statutes under which the predicate offenses were charged.  *See* (ECF No. 43 at 8.)  The filing of the Superseding Indictment addressed the lack of clarity such that Eze's argument on this point is MOOT.  *See United States v. Arrona*, DKC-10-0102, 2010 WL 3002044, at * 1 (D. Md. July 29, 2010) ("A superseding indictment was filed on May 26, 2010, thus rendering moot any challenge to the original indictment."); *see also United States v. White*, 2017 WL 1684860, at *3, *3 n.7 (D.S.C. May 3, 2017) (collecting cases and noting that superseding indictment that corrects error in original indictment may render moot a motion to dismiss indictment).  Eze renewed his Motion to Dismiss (ECF No. 43) as to the Superseding Indictment (ECF No. 48) on the record at the hearing.  Accordingly, this Court addresses Eze's three remaining theories of dismissal.

not use another's identifying information to facilitate a predicate offense as required to commit aggravated identity theft under 18 U.S.C. § 1028A(a)(1).[4]  (*Id.* at 9, 10–12.)

In Opposition (ECF No. 45), the Government argues that Eze fails to meet the standard to dismiss an indictment.  First, the Government argues that principles of statutory interpretation, the broader statutory scheme, derivative regulations, and persuasive caselaw indicate that 18 U.S.C. § 1542 defines "application for passport" to include passport renewals. (ECF No. 45 at 9, 10.)  Next, the Government contends that Counts One, Two, Three, Six, and Seven are not time-barred because they each charge conduct that occurred within the ten year limitations period.  Specifically, the Government explains that Count One charges false statements on September 24, 2017; Counts Two and Three charge false swearing in an immigration matter on May 13, 2019; and Counts Six and Seven charge use of a passport secured by false statement on March 15, 2021, and October 23, 2023, respectively.  (*Id.* at 13.) Finally, the Government argues that Eze's assertions as to Counts Four, Five, Eight, and Nine are inappropriate in a motion to dismiss because they relate to the veracity of the facts alleged in the Superseding Indictment.  (*Id.*)  The Court addresses each argument in turn.

## I.    Count One: Scope of 18 U.S.C. § 1542

The statutory scheme makes clear that "application for passport" in 18 U.S.C. § 1542 includes the renewal of a passport and is not limited to initial passport applications.  As the U.S. Court of Appeals for the Fourth Circuit has explained, "[t]he starting point for any issue of statutory interpretation … is the language of the statute itself."  *United States v. Bly*, 510 F.3d

---

[4] 18 U.S.C. § 1028A(a)(1) provides, "[w]hoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall … [be punished]."

453, 460 (4th Cir. 2007). A court's inquiry regarding the meaning of a statute "must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.* Moreover, courts determine the unambiguity of statutory language "by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *United States v. Thompson-Riviere*, 561 F.3d 345, 354 (4th Cir. 2009) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). As the Supreme Court has explained, where statutory text is ambiguous, a court should evaluate whether "the remainder of the statutory scheme" clarifies the ambiguity. *King v. Burwell*, 576 U.S. 473, 492 (2015).

In relevant part, 18 U.S.C. § 1542 provides:

> Whoever willfully and knowingly makes any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports …

*Id.* By referring to the *issuance* of a passport, § 1542 appears to contemplate both initial applications and renewals of a passport. Even assuming this lack of limiting language creates ambiguity, the surrounding statutory scheme suggests that § 1542 applies to passport renewals. Courts construing the meaning of "application for passport" in § 1542 have relied on 22 U.S.C. § 213, which governs the process to obtain a passport. *See United States v. Gu*, 8 F.4th 82, 87 (2d Cir. 2021). Section 213 differentiates an initial application for a passport by requiring an oath only for applicants who have not previously received an American passport. 22 U.S.C. § 213. That statute's broad discussion of "the issuance of any such passport" and inclusion of an oath requirement only for initial passports suggests that it extends to passport renewals. *Id.*

Derivative federal regulations define a passport application as "the application form for a United States passport, as prescribed by the [State] Department pursuant to 22 U.S.C. [§]

213 and all documents, photographs, and statements submitted with the form or thereafter in support of the application." 22 C.F.R. § 51.1. Like § 213, such regulations differentiate between first-time and repeat applicants by requiring only first-time applicants to appear in person to swear an oath verifying their application. 22 C.F.R. § 51.21(a). Accordingly, the broader statutory and regulatory scheme contemplates a passport renewal application to be within the definition of "application for passport."

Moreover, several courts have applied § 1542 to passport renewal applications. *See United States v. McFarlane*, 548 F. Supp. 3d 535, 543 (E.D.N.C. 2021) (assuming § 1542 applies to passport renewal applications but dismissing indictment on other grounds); *U.S. v. FNU LNU*, 653 F.3d 144 (2d Cir. 2011) (affirming defendant's conviction for violation of 18 U.S.C. § 1542 based on false statement in passport renewal without considering whether § 1542 applies to passport renewals); *United States v. Pires*, 574 F. Supp. 3d 38, 39 (D.N.H. 2021) (charging passport fraud under 18 U.S.C. § 1542 based on defendant's alleged use of another person's identifying information in his 2017 passport renewal application). As Eze acknowledged on the record at the February 4, 2025, Motions Hearing, there appears to be no caselaw that would support his position as to the meaning of "application for passport" in § 1542. Accordingly, Eze's argument as to the scope of 18 U.S.C. § 1542 fails.

## II.    Counts One, Two, Three, Six, and Seven: Statute of Limitations

Eze's assertion that Counts One, Two, Three, Six, and Seven are time-barred similarly must fail. Both parties agree that these charges, brought under 18 U.S.C. §§ 1542 and 1546, are subject to the ten-year limitations period provided in 18 U.S.C. § 3291. (ECF No. 43 at 4; ECF No. 45 at 11–12.) Each of these counts charges conduct that occurred within the ten-

year limitations period because they pertain to events that occurred in 2017 (Count One), 2019 (Counts Two and Three), 2021(Count Six), and 2023 (Count Seven), and Eze was indicted on November 21, 2023.[5]  Therefore, the Indictment comports with the statute of limitations imposed in § 3291.

To the extent that Eze contests the presentation of information that predates the limitations period both in the Superseding Indictment and to the grand jury, that argument is unconvincing.  The Government may present a grand jury relevant background information beyond the statute of limitations provided the charges themselves are related to conduct within the limitations period.  *See, e.g.*, *United States v. Farah*, 474 F. App'x 1, 2, 11 (4th Cir. 2007) (affirming conviction for naturalization fraud after noting district court twice declined to dismiss indictment on grounds that it included information beyond the limitations period).  Additionally, as further explained below, any arguments related to the veracity of the information Eze submitted in application forms is not appropriate for consideration at the motion to dismiss stage, where courts must accept as true the allegations in the indictment.  *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012).

### III.    Counts Four, Five, Eight, and Nine

Finally, Eze's arguments that he used his own birthdate and birthplace, used the birthdate and birthplace of a fictitious individual, or otherwise did not use such information

---

[5] As the Court explained on the record at the Motions Hearing, Eze's argument that any dismissal as to Count One necessitates dismissal of every other Count in the Superseding Indictment is unclear.  It appears that Eze contends that every Count stems from Eze's original acquisition of a United States passport in 2003 and 2008 such that he cannot be charged with any conduct related to the use of his passport even within the statute of limitations.  As stated on the record, the Court rejects this argument.  Moreover, the Court notes that such an argument would allow blanket use of fraudulently obtained passports obtained more than ten years before an individual's indictment.  This outcome would circumvent Congress's intent in passing 18 U.S.C. §§ 1542, 1546.

"during and in relation to a felony" cannot form grounds to dismiss the aggravated identity theft charges against him in Counts Four, Five, Eight, and Nine. For the purposes of a motion to dismiss, a court must assume that allegations in an indictment are true. *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004). That is, "[t]o warrant dismissal of the indictment, [a defendant] would need to demonstrate that the allegations therein, even if true, would not state an offense." *Id.* (citing *United States v. Hooker*, 841 F.2d 1225, 1227–28 (4th Cir. 1988) (en banc)); *see also United States v. Brewbaker*, 87 F.4th 563, 572 (4th Cir. 2023). In this case, the Court at this stage cannot consider Eze's arguments regarding whether the information he used was his own or those of a fictitious individual. Such arguments inappropriately dispute the veracity of the allegations in the Superseding Indictment. As explained on the record at the Motions Hearing, Eze is free to make arguments to the jury about the information he allegedly used in the events charged in Counts Four, Five, Eight, and Nine. s

Alternatively, dismissal may be warranted where the indictment "fail[s] to state an offense by omitting a necessary element." *Brewbaker*, 87 F.4th at 572. To prove aggravated identity theft, the Government must show that, "during and in relation to a felony, [a defendant] knowingly transfer[red], possesse[d], or use[d], without lawful authority, a means of identification of another person." 18 U.S.C. § 1028A(a)(1); *see also Flores-Figueroa v. United States*, 556 U.S. 646, 647, 129 S. Ct. 1886 (2009). Eze argues that the Government failed to meet this burden because he did not use any information "during and in relation to a felony" in the events charged in Counts Four, Five, Eight, and Nine. Closer review of Eze's argument, however, reveals that he merely asserts that he used his own name and therefore did not further any predicate offense. As explained above, the Court cannot evaluate whether the

12

name Eze used in relation to the events charged in Counts Four, Five, Eight, and Nine, was his own or that of another. This determination is a question of fact that the Court must treat as true for the purposes of Eze's motion to dismiss. *Brewbaker*, 87 F.4th at 572. Therefore, assuming that the allegations in Counts Four, Five, Eight, and Nine are true, the Government has sufficiently charged aggravated identity theft based on the use of S.D.C.'s birthdate and birthplace in various applications in 2019, 2021, and 2023.

## CONCLUSION

For the foregoing reasons and the reasons stated on the record at the February 4, 2025, Motions Hearing, Defendant's Motion to Dismiss (ECF No. 43) is DENIED.

Dated: February 4, 2025                          /s/ _____

                                                 Richard D. Bennett
                                                 United States Senior District Judge